UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

**CASE NO.: 25-80129-cv-Middlebrooks/Matthewman**

LEONARDO CRESPO,

Plaintiff,

v.

TESLA, INC., TESLA FLORIDA, INC.,

Defendants.

_______________________________________/

FILED BY ___ D.C.
SEP - 2 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**PLAINTIFF'S MOTION FOR RECUSAL OF THE HONORABLE DONALD M. MIDDLEBROOKS, PRESIDING DISTRICT JUDGE, PURSUANT TO 28 U.S.C. § 455**

## INTRODUCTION

Plaintiff respectfully moves for the recusal of the Honorable Donald M. Middlebrooks pursuant to 28 U.S.C. § 455(a) and § 455(b)(1). Recusal is compelled by a documented pattern of judicial conduct that has not only created an undeniable appearance of partiality but has also crossed the critical threshold articulated by the Supreme Court in *Liteky v. United States*: a "deep-seated... antagonism that would make fair judgment impossible."

This pattern unfolded in three distinct and escalating phases, transforming the Court from a neutral arbiter into an active adversary. It began with the Court's disparate application of procedural rules, which created a fundamentally uneven playing field. It then progressed to the Court's ratification of a monetary sanction that was the direct fruit of a known falsehood submitted by the Defendant, thereby validating an injustice. The pattern culminated in the

Court's extraordinary and unsolicited act of preemptively certifying Plaintiff's un-briefed appeal as "frivolous" (DE 156). In doing so, the Court prematurely adjudicated a pending substantive motion, creating a structural error in the proceedings that makes a fair review of that motion impossible. This final act is the dispositive evidence of the deep-seated antagonism that requires disqualification.

Plaintiff files this motion now to comply with the timeliness requirements governing recusal. Plaintiff will file his Objections to the Magistrate Judge's Order (DE 170), and a separate motion for the Magistrate's disqualification, as soon as the transcript of the relevant hearing, which has been ordered, becomes available.

**LEGAL STANDARD FOR RECUSAL**

The standard for judicial disqualification is governed by 28 U.S.C. § 455. This statute establishes two distinct but related grounds for recusal relevant to this case.

First, § 455(a) provides an objective standard, mandating that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned". The inquiry is not whether the judge is subjectively biased, but whether "a reasonable person knowing all the relevant facts would think about the impartiality of the judge". This provision exists to "promote public confidence in the impartiality of the judicial process" by avoiding even the appearance of impropriety.

Second, § 455(b)(1) requires disqualification where a judge "has a personal bias or prejudice concerning a party". While judicial rulings "almost never constitute a valid basis" for recusal

under this section, the Supreme Court in *Liteky v. United States*, 510 U.S. 540 (1994), established a critical exception. Recusal is required if a judge's actions, even those originating from judicial proceedings, "display a deep-seated favoritism or antagonism that would make fair judgment impossible". It is this high standard of demonstrated antagonism that the record in this case now satisfies.

**ARGUMENT**

The record in this case reveals a troubling, three-phase pattern of escalating judicial bias that compels recusal under both the objective "appearance of partiality" standard of 28 U.S.C. § 455(a) and the "deep-seated antagonism" standard of § 455(b)(1) as defined in *Liteky v. United States*.

First, the Court established a pervasive pattern of disparate treatment, creating a fundamentally uneven playing field where the pro se Plaintiff was held to a punitive standard while the counseled corporate Defendant was excused for its own, more serious, procedural and ethical failings. This conduct, on its own, is sufficient to cause a reasonable person to question the Court's impartiality.

Second, the Court moved from passive disparate treatment to active harm by knowingly ratifying a monetary sanction against Plaintiff that was the direct fruit of a material falsehood submitted under oath by the Defendant. This abdication of the Court's duty to police a fraud on its own proceedings cemented the appearance of partiality and caused tangible prejudice to Plaintiff.

Finally, the Court abandoned its role as a neutral arbiter entirely, transforming into an active

adversary to the Plaintiff. By issuing an extraordinary, unsolicited order that preemptively declared Plaintiff's un-briefed appeal as "frivolous" for the stated purpose of retaining jurisdiction, the Court displayed the very "deep-seated... antagonism that would make fair judgment impossible" and requires disqualification.

## I. PHASE ONE: A PERVASIVE PATTERN OF DISPARATE TREATMENT CREATED AN UNEVEN PLAYING FIELD AND AN APPEARANCE OF PARTIALITY.

A judge's impartiality is reasonably questioned when the record reveals a persistent double standard in the application of rules and the characterization of litigants' conduct. Here, the Court has consistently applied a strict, punitive standard to the pro se Plaintiff while affording leniency to the counseled corporate Defendant, creating a powerful appearance of an uneven playing field that satisfies the objective standard for recusal under § 455(a).

### A. The Court Punished a Pro Se Litigant's Procedural Error More Severely Than a Corporate Defendant's Material Falsehood Under Oath.

The Court's grossly disproportionate responses to the parties' respective errors reveal a profound double standard. Plaintiff, a non-lawyer, inadvertently submitted filings with AI-generated placeholder citations he had forgotten to replace in his discovery filings, an error he admitted and for which he apologized. This Court affirmed sanctions requiring Plaintiff to apologize in writing to opposing counsel and pay Defendant's attorney's fees incurred in researching the error (DE 126, p. 1, n.1).

In stark contrast, on May 19, 2025, Tesla submitted a sworn interrogatory response containing a

material falsehood: that its employee, Abner Pena, "conducted the review of Plaintiff's alleged revocation" (DE 105-1). This was proven false by Mr. Pena's own deposition testimony. Yet, the Magistrate Judge dismissed this abuse of the judicial process as a mere "tempest in a teapot" (DE 170, p. 5), a trivialization this Court is now positioned to ratify. A reasonable observer would question the impartiality of a court that punishes a non-lawyer's admitted procedural error more severely than a corporate defendant's material falsehood under oath.

**B. The Court Strictly Enforced Procedural Rules Against Plaintiff While Waiving a Mandatory Rule for Defendant.**

This double standard extends to the enforcement of procedural rules. This Court affirmed the imposition of a $921 sanction against Plaintiff for filing a motion to resolve what his brief accurately termed Defendant's "logically impossible statements" regarding a former employee's address—a motion the Magistrate nonetheless deemed "frivolous" (DE 126, p. 5). Yet, when faced with Defendant's own clear procedural violation, the Court waived the rule.

Defendant repeatedly asserted attorney-client privilege but failed to provide a privilege log, as is mandatory under Federal Rule of Civil Procedure 26(b)(5)(A). In his Objections, Plaintiff squarely presented this issue to the Court (DE 94, p. 4). This Court explicitly excused Defendant's procedural default, reasoning that "analyzing attorney/client or work product privilege was unnecessary" because the discovery was being denied on other grounds (DE 126, p. 4). This ruling rewarded Defendant for its own violation, creating a "discovery black box" that has shielded an unknown number of documents from any form of review and demonstrates a biased application of the rules.

**C. The Court Characterized Plaintiff's Advocacy as "Obstructive" While Neutrally Describing Defendant's Unexplained Tactical Reversals.**

The Court's disparity in tone reinforces the appearance of bias. In his order certifying the appeal as frivolous, Judge Middlebrooks characterized Plaintiff's vigorous litigation efforts as "generally... obstructive" and a "delay tactic" (DE 156, p. 5).

This critical language stands in stark contrast to the Court's dispassionate description of Defendant's own tactical reversal just days later. In his order on the jury trial demand, the Judge noted that Defendant, after months of demanding a jury trial, filed a notice consenting to a bench trial "without explanation" (DE 157, p. 2). When Plaintiff litigates his case, he is labeled "obstructive." When Defendant executes a significant and unexplained tactical reversal, its conduct is presented as a neutral procedural event.

**D. The Court Accepted Defendant's Bad-Faith Denial of a Verifiable Fact.**

The Court further demonstrated its partiality by failing to enforce a basic discovery rule against Defendant. In Request for Admission No. 21, Plaintiff asked Tesla to admit receipt of his revocation letter, attaching a signed USPS Certified Mail return receipt as dispositive proof of delivery (DE 62-1, Ex. RFA-J). Defendant responded with a one-word "Denied" (DE 62-2, p. 6).

The Magistrate Judge, affirmed by this Court (DE 126), refused to compel a proper answer, stating he would not force a party to change its response if it had a "good faith basis" (DE 88, p. 5), without ever questioning the basis for a denial in the face of documentary proof. This failure to scrutinize a bad-faith denial of a verifiable fact, while later characterizing Plaintiff's efforts to

enforce the rules as an "intent to harass" (DE 88, p. 4), contributes to the cumulative pattern of disparate treatment satisfying the standard for recusal under § 455(a).

## II. PHASE TWO: THE COURT ABDICATED ITS DUTY TO POLICE A FRAUD ON THE COURT, KNOWINGLY RATIFYING AN INJUSTICE.

The Court's conduct escalated from creating an appearance of partiality to causing active, tangible harm. By knowingly affirming a sanction order that was the direct fruit of Defendant's proven falsehood, this Court abdicated its duty to police a fraud on its own proceedings and ratified a manifest injustice.

The causal chain of prejudice is undeniable and documented in the record:

1. The Foundational Falsehood: On May 19, 2025, Tesla submitted a sworn interrogatory stating that "Abner Pena conducted the review of Plaintiff's alleged revocation" (DE 105-1).
2. The Direct Judicial Reliance: On June 30, 2025, Magistrate Judge Matthewman explicitly relied on this falsehood to deny another of Plaintiff's motions (DE 81), reasoning that deposing another witness seemed "unnecessary" precisely because "the Court already ordered the deposition of Abner Pena, a current employee of Defendant who reviewed the facts of Plaintiff's case" (DE 88, p. 7).
3. The Resulting Sanction: Because the motion was deemed "unnecessary" based on the lie, the Magistrate Judge sanctioned Plaintiff in that same order (DE 88, p. 7). The sanction is, therefore, the direct fruit of the poisonous tree.
4. The Ratification by This Court: This Court, with full knowledge that the premise was false, affirmed the sanction (DE 126).

This Court's act of affirming the order was an act of ratifying a known falsehood. A judge's refusal to acknowledge that a subordinate's order is based on a proven falsehood, and instead affirming that order without comment, would lead any reasonable person to question that judge's impartiality and commitment to the truth-finding process. By validating an injustice in this manner, the Court cemented the appearance of partiality and allowed a financial penalty to stand against Plaintiff that was inextricably linked to the Defendant's fraud on the court.

## III. PHASE THREE: THE COURT ABANDONED JUDICIAL NEUTRALITY, DISPLAYING DEEP-SEATED ANTAGONISM.

The pattern of bias culminated in an extraordinary judicial act that is the dispositive evidence of the "deep-seated... antagonism" that requires recusal under *Liteky*. The Court's unsolicited order (DE 156) was improper in several distinct ways: it was the culmination of a biased pattern of conduct, it transformed the Court into an adversary, its reasoning was circular and punitive, and it created a structural error by prematurely adjudicating a separate, pending motion.

### A. The Cumulative Effect of Prior Rulings Creates an Undeniable Appearance of Partiality.

The Judge's prejudgment in DE 156 is not an isolated event but the culmination of a pattern of judicial rulings that have consistently and disproportionately favored the Defendant while holding the pro se Plaintiff to a punitive standard. An objective observer would consider the following cumulative record:

- The Court affirmed sanctions against the pro se Plaintiff for an admitted procedural error, while simultaneously positioning itself to ratify a Magistrate's finding that a material

falsehood submitted under oath by the corporate Defendant—represented by a large law firm—was a mere "tempest in a teapot."

- The Court sanctioned Plaintiff for filing a motion to compel (DE 81) that was later proven to have been substantially justified by Defendant's falsehood, yet repeatedly excused Defendant's own mandatory procedural violations, such as its failure to produce a privilege log.
- The Court has adopted a disparate and critical tone when describing Plaintiff's litigation efforts, labeling them "obstructive," while neutrally describing Defendant's own significant and unexplained tactical reversals as mere procedural events.

Viewed in this context, the premature finding in DE 156 is the final piece of evidence demonstrating a pattern of conduct from which an objective observer would entertain a significant doubt about the Court's impartiality. The core principle of 28 U.S.C. § 455(a) is that "justice must satisfy the appearance of justice." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988). That appearance has been shattered here.

**B. The Court Became an Adversary to the Appellant.**

On August 15, 2025, Plaintiff filed a standard Notice of Appeal (DE 129). A mere seven days later, on August 22, 2025, before Plaintiff had filed any appellate brief, this Court issued its *sua sponte* "Order on Plaintiff's Notice of Appeal" (DE 156). In this order, the Court declared, "I find that Plaintiff's appeal is frivolous and will certify it as such so that this litigation may continue" (DE 156, p. 5). The Court prejudged the merits, stating, "Plaintiff's likelihood of success... is minimal" (DE 156, p. 5).

Such an action cannot be characterized as adjudication; it is, by its nature, an extrajudicial attack on a litigant for exercising his statutory right to appeal. By assessing the "likelihood of success" and declaring the appeal "frivolous" before the appellant had even presented his arguments, Judge Middlebrooks stepped out of his role as a neutral arbiter and became an advocate for his own ruling and an adversary to the appellant.

The Court's stated justification reveals an improper motive. The Judge explicitly stated his purpose was to invoke the "dual jurisdiction" rule to "retain jurisdiction" over the case and "minimize disruption" (DE 156, p. 4). This is not a neutral concern for judicial efficiency, but a manifestation of bias. The filing of a notice of appeal ordinarily divests the district court of jurisdiction. By making a "frivolous" determination without the benefit of any briefing, the judge could not have had a good-faith basis for invoking the narrow exception. His stated goal was simply to prevent the ordinary operation of appellate procedure from interfering with his personal desire to push the case to a conclusion.

**C. The Court's Premature Adjudication of a Pending Motion Created a Structural Error.**

The same order (DE 156) reveals a deeper, structural bias. In finding Plaintiff's conduct "obstructive," the Court explicitly cited as an example the act of filing Plaintiff's pending Motion for Sanctions (DE 105) (DE 156, p. 5, n.3). The Court made this finding three days before the Magistrate Judge had even ruled on that motion.

This premature adjudication is a structural error that has corrupted the neutrality of the tribunal itself. The Judge's finding has now become the "law of the case"—a principle that holds that a court's decision on an issue, once made, should be followed for the remainder of the case. The

Judge has made a finding that the act of filing motion DE 105 was an example of "obstructive" conduct. For the District Judge to now sustain Plaintiff's forthcoming objections on that same matter, he would be forced to directly contradict and overturn the established law of his own case. This places Plaintiff in an unconstitutional "catch-22" and makes a fair review impossible.

**D. The Court's Reasoning Was Circular and Punitive.**

Furthermore, the Court's reasoning for its "frivolous" finding is both circular and punitive. The Order justifies its conclusion by citing the very discovery motions denied in the order being appealed as evidence of Plaintiff's "obstructive" conduct (DE 156, p. 5, n.3). This logic—that an appeal of a ruling is frivolous because the litigant took the actions that led to the ruling—is not a neutral legal analysis. It is a hostile attack on the litigant for the very act of seeking appellate review. This proactive step to undermine an appeal demonstrates a personal investment in the finality of his own orders and constitutes precisely the type of "deep-seated... antagonism" that *Liteky* described as grounds for recusal.

**E. Recusal is Necessary to Protect Institutional Integrity.**

This motion is not merely about potential prejudice to one litigant. The Judge's actions create a dangerous precedent that threatens the integrity of the magistrate review process. If a district judge is permitted to pre-judge the merits of objections before they are even filed, the review process under Rule 72(a) becomes a meaningless formality, effectively insulating a magistrate's rulings from meaningful review. Recusal is therefore necessary not just for the parties, but to protect the institutional integrity of the judiciary itself.

## CONCLUSION

Taken in isolation, any single ruling might be explained as an exercise of discretion. But viewed together, the pattern is undeniable. The record demonstrates a clear and escalating pattern of judicial conduct that has created more than a mere appearance of partiality. The Court's actions, culminating in its *sua sponte* and premature certification of Plaintiff's appeal as frivolous, have displayed a deep-seated antagonism that makes a fair judgment impossible. To protect the integrity of the judicial process and ensure Plaintiff receives a fair trial before an impartial tribunal, recusal is required.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order:

- GRANTING this Motion for Recusal;
- ORDERING the recusal of the Honorable Donald M. Middlebrooks from all further proceedings in this matter;
- REQUESTING that the Clerk of Court reassign this case to another District Judge pursuant to the Court's internal procedures; and
- STAYING the deadline for Plaintiff to file any Objections to the Magistrate Judge's orders (DE 170) pending the resolution of this motion.

Respectfully submitted,

Leonardo Crespo, Plaintiff, Pro Se
1128 Crystal Drive, Palm Beach Gardens, FL 33418
leo@leocrespo.com 725-225-6889
Dated: September 2, 2025

**CERTIFICATE OF CONFERRAL**

Pursuant to Local Rule 7.1(a)(3), I hereby certify that on September 2, 2025, I made a good faith effort to confer with counsel for Defendants, Jessica J. Gross, Esq., and Patrick M. Delaney, Esq., regarding the relief sought in this motion. Mr. Delaney stated that Tesla opposes the motion.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2ndth day of September, 2025, a true and correct copy of the foregoing was served via email upon counsel for Defendants: Jessica J. Gross, Esq. (jgross@rumberger.com) and Patrick M. Delaney, Esq. (pdelaney@rumberger.com).

Leonardo Crespo