UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

**CASE NO.: 25-80129-cv-Middlebrooks/Matthewman**

LEONARDO CRESPO,

Plaintiff,

v.

TESLA, INC., TESLA FLORIDA, INC.,

Defendants.

______________________________/

FILED BY ___ D.C.
SEP 03 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**PLAINTIFF'S MOTION FOR DISQUALIFICATION OF MAGISTRATE JUDGE WILLIAM MATTHEWMAN PURSUANT TO 28 U.S.C. §§ 144 & 455**

Pursuant to 28 U.S.C. § 144 and § 455(a) and (b)(1), Plaintiff Leonardo Crespo respectfully moves for the disqualification and recusal of Magistrate Judge William Matthewman from all further proceedings in this matter. This motion is made for the reasons set forth in the accompanying Memorandum of Law and is supported by the attached Affidavit of Leonardo Crespo, which is incorporated herein by reference.

**MEMORANDUM OF LAW**

**I. INTRODUCTION**

Disqualification is mandated not by a single adverse ruling, but by a corrosive pattern of judicial conduct that, when viewed in its totality, reveals a deep-seated antagonism toward the pro se Plaintiff that makes fair judgment impossible. The record, established in the Court's Order of August 25, 2025 (DE 170), the transcript of the June 2, 2025 discovery hearing (DE 185-1,

hereinafter "Tr."), and detailed in the attached Affidavit, demonstrates that the Magistrate Judge: (1) developed a personal stake in the outcome of a sanctions motion by willfully misrepresenting the judicial record to protect his own prior, flawed ruling; (2) engaged in a pervasive pattern of disparate treatment, directing hostility toward the pro se Plaintiff while showing deference to corporate counsel; and (3) abdicated his core judicial duty to manage discovery and protect an unrepresented litigant from a procedural ambush.

This conduct violates the foundational canons of judicial ethics and compels recusal to restore public confidence in the integrity and impartiality of the judiciary.

**II. LEGAL STANDARD FOR DISQUALIFICATION**

Two federal statutes, 28 U.S.C. §§ 144 and 455, govern the disqualification of federal judges.

Section 455 is the broader, self-executing statute. Section 455(a) establishes an objective standard, requiring a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned". The inquiry is not whether the judge is subjectively biased, but whether "an objective, disinterested, lay observer fully informed of the facts... would entertain a significant doubt about the judge's impartiality". *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988). Section 455(b)(1) requires disqualification where a judge "has a personal bias or prejudice concerning a party".

Section 144 provides the procedural mechanism for a party to seek disqualification, requiring a "timely and sufficient affidavit" stating the specific facts and reasons for the belief that personal bias exists. The challenged judge must accept the factual allegations in the affidavit as true and

rule only on their legal sufficiency. If the affidavit is legally sufficient, the judge "shall proceed no further therein, but another judge shall be assigned".

While judicial rulings alone are rarely a basis for recusal, the Supreme Court in *Liteky v. United States*, 510 U.S. 540 (1994), established that recusal is required if a judge's actions "display a deep-seated favoritism or antagonism that would make fair judgment impossible". The record here satisfies all of these standards.

## III. ARGUMENT

### A. Argument I: Disqualification is Mandated Because the Magistrate Judge Developed a Personal Stake in the Outcome by Willfully Misrepresenting the Record to Protect a Prior Flawed Ruling.

Once Plaintiff's Motion for Sanctions (DE 105) established that the Magistrate Judge's prior sanctions order (DE 88) was predicated on a proven falsehood, the judge developed a personal interest in the outcome of that motion. He was no longer a neutral arbiter of the dispute between Plaintiff and Tesla; he was, in effect, ruling on a challenge to the integrity of his own prior conduct. His impartiality became reasonably questionable because he had a personal stake in defending his judicial record.

The evidence of this conflict, as detailed in the attached Affidavit, is the Judge's demonstrably false finding in his August 25, 2025 Order (DE 170).

- **The False Finding:** The Judge found that "**The Court was not misled**" by Defendant Tesla's false interrogatory answer (DE 170, p. 6).

- **The Undeniable Record:** This finding is irreconcilably contradicted by the Judge's own prior written order (DE 88). In that order, the Judge explicitly relied on Tesla's falsehood as the central basis to deny another of Plaintiff's motions and to sanction him. The Judge's stated reason was that the motion was "unnecessary" precisely because "**the Court already ordered the deposition of Abner Pena, a current employee of Defendant who reviewed the facts of Plaintiff's case**" (DE 88, p. 7).

This is not a finding of fact but an act of self-justification. By knowingly memorializing a falsehood to protect his prior flawed ruling, the judge violated his core duty of judicial integrity under Canon 1. An objective observer would be compelled to conclude that a judge who misrepresents the record to conceal his own error has a personal stake in the outcome and cannot be impartial.

**B. Argument II: The Cumulative Effect of the Magistrate Judge's Rulings and Demeanor Reveals a Deep-Seated Antagonism That Makes Fair Judgment Impossible.**

While isolated adverse rulings are typically insufficient for disqualification, the cumulative effect of multiple errors and instances of hostile conduct can, in the aggregate, demonstrate the "deep-seated antagonism" required for recusal under *Liteky*. The record here does not present a single, isolated error but a pattern of conduct that forms a mosaic of bias. This mosaic, detailed in the attached Affidavit, is composed of several distinct, yet interconnected, pieces:

**1. The False Narrative:** The judge constructed a false narrative that blamed the Plaintiff for a "dilemma" entirely created by Tesla's misconduct. His official finding that Plaintiff is "**largely responsible for this dilemma**" and made a "**strategic decision**" is a complete inversion of

causality that is directly contradicted by the written record. Plaintiff's consistent position was to take *both* depositions, stating unequivocally in writing, "**Mr. Pena will be deposed both in his individual capacity...and also in his capacity as Tesla's designated Rule 30(b)(6) witness**" (DE 52-1, p. 4), and formally requesting the Court to order both (DE 53, p. 4). The finding actively punishes the Plaintiff for successfully navigating the very procedural trap the judge was warned about but failed to disarm.

**2. The Double Standard:** The judge's antagonism is further revealed by the grossly disparate standards he applied to the parties. He dismissed Tesla's submission of a false statement under oath—a fraud on the court—as a mere "**tempest in a teapot**" while finding "**no misconduct**" (DE 170, p. 5). This leniency stands in stark contrast to his on-the-record hostility toward the Plaintiff.

**3. The Selective Enforcement of Rules:** This double standard extends to the enforcement of procedural rules. The judge held Plaintiff to a rigid procedural standard, using the 28-day deadline in Local Rule 26.1(g) as a primary basis to find his motion untimely (DE 170, p. 3). Yet, in that same order, he completely ignored Tesla's foundational violation of a Federal Rule—its failure to conduct a "reasonable inquiry" under FRCP 26(g) before filing its initial false statement.

**4. The Prejudicial Language in a Court Order:** The judge's animus is not confined to hearings but is memorialized in the public record. In his order sanctioning Plaintiff for an admitted procedural error, the Judge chose to title the order: "**SECOND ORDER ON DISCOVERY MOTIONS AND ON THE SUBMISSION OF FAKE, HALLUCINATED CASES BY THE**

**PRO SE PLAINTIFF LEONARDO CRESPO**" (DE 88, p. 1). The use of sensational and pejorative terms like "FAKE" and "HALLUCINATED" in an official court caption, instead of neutral language, is objective evidence of a deep-seated antagonism that goes far beyond routine judicial administration.

**5. The Objective Evidence of Disparate Treatment:** This pattern of applying a lenient, excusatory standard to the corporate defendant while directing hostility at the pro se plaintiff is most powerfully and objectively illustrated by the Judge's own words on the record, in violation of Canon 2:

| Treatment of Pro Se Plaintiff | Treatment of Defendant's Counsel |
|---|---|
| "I mean, come on. You are all back in **grade school**? This is **ridiculous**. Be adults." (Tr. 13:14-15) | "**Mr. Delaney is a good lawyer**." (Tr. 13:16) |
| "I find a lot of your positions, Mr. Crespo, to be very **frivolous**, and you seem to be **trying to make problems over and over again**." (Tr. 19:11-13) | "Mr. Delaney, what is your position?" (Tr. 13:4) |
| "This is something that **grade school children** should be able to work out." (Tr. 10:20-21) | "Are you willing to talk to Mr. Crespo and try to work out these discovery disputes, **if possible?**" (Tr. 34:23-24) |
| "You are **obviously not listening** to what I'm saying." (Tr. 11:12-13) | "I imagine an inspection like this would take a couple of hours, **right, Mr. Delaney?**" (Tr. 21:7-8) |
| "I understand I understand your position, and **I reject it**." (Tr. 18:11-12) | **"Any problems with that, Mr. Delaney?"** (Tr. 20:23) |

When assembled, these pieces—the willful misrepresentation, the inversion of causality, the

gross double standard, and the objective evidence of disparate treatment—reveal a clear picture of a judicial officer whose deep-seated antagonism toward the pro se plaintiff has made fair judgment impossible.

**C. Argument III: The Magistrate Judge's Impartiality is Reasonably Questioned Due to His Abdication of the Duty to Ensure a Fair Process for a Pro Se Litigant.**

Federal courts have a heightened duty to ensure the process is fundamentally fair for pro se litigants and that they are not defeated by procedural gamesmanship or a "procedural ambush" by experienced counsel. Judge Matthewman's conduct at the June 2 hearing was a dereliction of this specific duty, in violation of Canon 3. The hearing transcript, as detailed in the attached Affidavit, establishes an irrefutable timeline of this failure:

1. **Defendant Establishes a Procedural Trap.** Prior to the hearing, Tesla established an inescapable procedural trap by refusing to produce Mr. Pena for an individual deposition while simultaneously serving written objections to nearly every substantive topic proposed for the Rule 30(b)(6) corporate deposition, rendering that path for discovery futile.
2. **Defendant Misleads the Court with an Illusory Offer.** At the hearing, Tesla's counsel made the illusory and misleading offer that the corporate deposition would be all-encompassing, stating Mr. Pena "would not testify to anything different in his individual deposition".
3. **Plaintiff Provides a Clear Warning.** The pro se Plaintiff immediately put the judge on direct notice of this contradiction, stating unequivocally on the record: "Tesla has objected to pretty much all of the topics in his corporate position already" (Tr. 9:17-18).

4. **The Court Abdicates its Duty.** The judge ignored this specific, evidence-based warning. Instead of addressing the conflict, he told the plaintiff to rely on counsel's misrepresentation and then explicitly refused to engage further, stating, "I do not have all day. I do not have all day to go through all of your problems and all the other side's problems. I just don't" (Tr. 14:10-14).

5. **The Court Blames the Victim.** Having failed to police the trap, the Judge then retroactively punished the Plaintiff for navigating it, finding in his final Order that Plaintiff was "largely responsible for this dilemma" (DE 170, p. 4).

By refusing to police the procedural trap, the judge allowed it to remain sprung, leaving the plaintiff with no viable path to discovery other than the one he was ultimately forced to choose and for which he was later blamed. The judge's impartiality can be reasonably questioned not just because of what he did, but because of what he failed to do when his duty to a vulnerable litigant was at its most acute.

## IV. CONCLUSION

The record demonstrates more than mere legal error; it reveals a judicial process corrupted by a failure of integrity, impartiality, and diligence. The Magistrate Judge's actions and findings display a deep-seated antagonism toward the Plaintiff that makes fair judgment impossible. To protect the integrity of the judiciary and ensure Plaintiff receives a fair hearing, recusal is not just appropriate; it is necessary.

**WHEREFORE**, for the foregoing reasons and based on the facts set forth in the attached Affidavit, Plaintiff respectfully requests an Order:

1. **GRANTING** this Motion for Disqualification;
2. **ORDERING** the recusal of Magistrate Judge William Matthewman from all further proceedings in this matter; and
3. **REQUESTING** that the Clerk of Court reassign the Magistrate Judge's duties in this case to another Magistrate Judge pursuant to the Court's internal procedures.

**CERTIFICATE OF CONFERRAL**

Pursuant to Local Rule 7.1(a)(3), I hereby certify that on September 2, 2025, I conferred with counsel for Defendants in good faith effort to resolve the issue raised in this motion. Ms. Gross stated "Tesla does not agree".

**CERTIFICATE OF GOOD FAITH**

Pursuant to 28 U.S.C. § 144, I, Leonardo Crespo, certify that this motion and the accompanying affidavit are made in good faith.

Respectfully submitted,

Leonardo Crespo, Plaintiff, Pro Se
1128 Crystal Drive, Palm Beach Gardens, FL 33418
leo@leocrespo.com 725-225-6889
Dated: September 3, 2025

**AFFIDAVIT OF LEONARDO CRESPO IN SUPPORT OF MOTION FOR DISQUALIFICATION**

I, Leonardo Crespo, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Plaintiff in the above-captioned action and make this affidavit in support of my Motion to Disqualify Magistrate Judge William Matthewman based on my personal knowledge of the facts and the official court record.

2. On May 19, 2025, Defendant Tesla, Inc. ("Tesla") served a sworn interrogatory response stating that its employee, Abner Pena, "conducted the review of Plaintiff's alleged revocation" (DE 105-1, p. 7).

3. On June 17, 2025, at his deposition, Mr. Pena testified under oath, "Again, I did not conduct a review of the revocation. This was sent to our legal team" (DE 105-1, p. 20, ll. 12-13). This testimony proved Tesla's sworn statement was false.

4. On June 30, 2025, Magistrate Judge Matthewman issued his "Second Order on Discovery Motions" (DE 88). In that Order, he sanctioned me for filing a motion to compel contact information for a different former employee (DE 81). His stated reason for finding my motion "unnecessary" was his direct reliance on Tesla's false statement. He wrote: "the Court already ordered the deposition of Abner Pena, a current employee of Defendant who reviewed the facts of Plaintiff's case" (DE 88, p. 7).

5. On August 25, 2025, after it was proven that his reasoning in DE 88 was based on a falsehood, Magistrate Judge Matthewman issued an "ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS" (DE 170). In this Order, he made the following factual finding: "The Court was not misled" (DE 170, p. 6). This statement is a direct and irreconcilable contradiction of his own prior written finding in DE 88.

6. Prior to the June 2, 2025, discovery hearing, Tesla refused to produce Mr. Pena for an individual deposition, calling the request "completely inappropriate and unwarranted" in a May

22, 2025 email (DE 52-1, p. 3). Simultaneously, Tesla served written objections to nearly every substantive topic for a corporate deposition, rendering that path for discovery futile (DE 185-2).

7. At the June 2, 2025, hearing, I explicitly warned Judge Matthewman of this procedural trap, stating on the record: "Tesla has objected to pretty much all of the topics in his corporate position already" (Tr. 9:17-18).

8. Judge Matthewman ignored my warning and attempted to steer me into the futile corporate deposition, stating, "You just heard from Mr. Delaney that you are going to be able to ask him questions about—" and instructing me to take the deposition and then "talk to Mr. Delaney" to "work those out" (Tr. 9:21-22, 10:15-18).

9. In his August 25, 2025, Order (DE 170), Judge Matthewman retroactively punished me for correctly resisting his flawed guidance, finding that "Plaintiff is largely responsible for this dilemma" because I "insisted on taking Mr. Pena's deposition in his personal capacity" (DE 170, p. 4).

10. During the June 2, 2025, hearing, Judge Matthewman repeatedly used hostile and demeaning language toward me, including stating, "This is something that grade school children should be able to work out" (Tr. 10:20-21), "I mean, come on. You are all back in grade school? This is ridiculous. Be adults" (Tr. 13:14-15), and accusing me of being "very frivolous" and "trying to make problems over and over again" (Tr. 19:11-13).

11. In contrast, his tone toward Defendant's counsel was consistently deferential and polite, praising him as a "good lawyer" (Tr. 13:16) and repeatedly thanking him (Tr. 15:9).

12. In his Order (DE 170), Judge Matthewman dismissed Tesla's act of providing a false statement under oath as a mere "tempest in a teapot" and found "no misconduct" (DE 170, p. 5).

13. The facts stated herein are true and correct and form the basis for my belief that Magistrate Judge Matthewman has a personal bias and prejudice against me and that his impartiality in this matter might reasonably be questioned.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 3, 2025.

Leonardo Crespo

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of September, 2025, a true and correct copy of the foregoing was served via email upon counsel for Defendants: Jessica J. Gross, Esq. (jgross@rumberger.com) and Patrick M. Delaney, Esq. (pdelaney@rumberger.com).

Leonardo Crespo