UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

**CASE NO.: 25-80129-cv-Middlebrooks/Matthewman**

LEONARDO CRESPO,

Plaintiff,

v.

TESLA, INC., TESLA FLORIDA, INC.,

Defendants.

_______________________________________/

FILED BY [signature] D.C.
SEP 05 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**PLAINTIFF'S MOTION FOR DISQUALIFICATION OF THE HONORABLE DONALD M. MIDDLEBROOKS, PRESIDING DISTRICT JUDGE, PURSUANT TO 28 U.S.C. §§ 144 & 455**

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 144 and § 455(a) and (b)(1), Plaintiff Leonardo Crespo respectfully moves for the disqualification and recusal of the Honorable Donald M. Middlebrooks from all further proceedings in this matter. This motion is supported by the attached Affidavit of Leonardo Crespo, which is incorporated herein by reference.

Disqualification is compelled by a documented pattern of judicial conduct that has not only created an undeniable appearance of partiality but has also crossed the critical threshold articulated by the Supreme Court in *Liteky v. United States*: a "deep-seated... antagonism that would make fair judgment impossible."

This pattern, detailed in the attached Affidavit, unfolded in three distinct and escalating phases, transforming the Court from a neutral arbiter into an active adversary. It began with the Court's disparate application of procedural rules, creating a fundamentally uneven playing field. It then progressed to the Court's ratification of a monetary sanction that was the direct fruit of a known falsehood submitted by the Defendant, thereby validating an injustice. The pattern culminated in the Court's extraordinary and unsolicited act of preemptively certifying Plaintiff's un-briefed appeal as "frivolous" (DE 156), prematurely adjudicating a pending substantive motion and creating a structural error that makes fair review of that motion impossible. This final act is the dispositive evidence of the deep-seated antagonism that requires disqualification.

## II. LEGAL STANDARD FOR DISQUALIFICATION

Two federal statutes, 28 U.S.C. §§ 144 and 455, govern the disqualification of federal judges.

Section 455 is the broader, self-executing statute. Section 455(a) establishes an objective standard, requiring a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned". The inquiry is not whether the judge is subjectively biased, but whether "a reasonable person knowing all the relevant facts would think about the impartiality of the judge". Section 455(b)(1) requires disqualification where a judge "has a personal bias or prejudice concerning a party".

Section 144 provides the procedural mechanism for a party to seek disqualification, requiring a "timely and sufficient affidavit" stating the specific facts and reasons for the belief that personal bias exists. The challenged judge must accept the factual allegations in the affidavit as true and rule only on their legal sufficiency. If the affidavit is legally sufficient, the judge "shall proceed

no further therein, but another judge shall be assigned".

While judicial rulings alone are rarely a basis for recusal, the Supreme Court in *Liteky v. United States*, 510 U.S. 540 (1994), established that recusal is required if a judge's actions "display a deep-seated favoritism or antagonism that would make fair judgment impossible". The record here satisfies all of these standards.

The Affidavit does not rely on isolated adverse rulings, but on a documented, cumulative pattern of disparate treatment, procedural irregularities, and premature adjudication that together create a structural barrier to fair review. These are not ordinary exercises of discretion, but actions that, if taken as true, would cause a reasonable person to question the Court's impartiality under 28 U.S.C. §§ 144 and 455. As such, the Affidavit meets the statutory requirement of legal sufficiency, and the allegations must be accepted as true for purposes of determining reassignment.

**III. ARGUMENT**

The record in this case, as detailed in the attached Affidavit, reveals a troubling, three-phase pattern of escalating judicial bias that compels disqualification under both the objective "appearance of partiality" standard of 28 U.S.C. § 455(a) and the "deep-seated antagonism" standard of § 455(b)(1) as defined in *Liteky v. United States*.

**I. PHASE ONE: A PERVASIVE PATTERN OF DISPARATE TREATMENT CREATED AN UNEVEN PLAYING FIELD AND AN APPEARANCE OF PARTIALITY.**

A judge's impartiality is reasonably questioned when the record reveals a persistent double

standard in the application of rules and the characterization of litigants' conduct. Here, the Court has consistently applied a strict, punitive standard to the pro se Plaintiff while affording leniency to the counseled corporate Defendant, creating a powerful appearance of an uneven playing field that satisfies the objective standard for recusal under § 455(a).

**A. The Court Punished a Pro Se Litigant's Procedural Error More Severely Than a Corporate Defendant's Material Falsehood Under Oath.**

The Court's grossly disproportionate responses to the parties' respective errors reveal a profound double standard. Plaintiff, a non-lawyer, inadvertently submitted filings with AI-generated placeholder citations he had forgotten to replace in his discovery filings, an error he admitted and for which he apologized. This Court affirmed sanctions requiring Plaintiff to apologize in writing to opposing counsel and pay Defendant's attorney's fees incurred in researching the error (DE 126, p. 1, n.1).

In stark contrast, on May 19, 2025, Tesla submitted a sworn interrogatory response containing a material falsehood: that its employee, Abner Pena, "conducted the review of Plaintiff's alleged revocation" (DE 105-1). This was proven false by Mr. Pena's own deposition testimony. Yet, the Magistrate Judge dismissed this abuse of the judicial process as a mere "tempest in a teapot" (DE 170, p. 5), a trivialization this Court is now positioned to ratify. A reasonable observer would question the impartiality of a court that punishes a non-lawyer's admitted procedural error more severely than a corporate defendant's material falsehood under oath.

**B. The Court Strictly Enforced Procedural Rules Against Plaintiff While Waiving a**

**Mandatory Rule for Defendant.**

This double standard extends to the enforcement of procedural rules. This Court affirmed the imposition of a monetary sanction against Plaintiff for filing a motion to resolve what his brief accurately termed Defendant's "logically impossible statements" regarding a former employee's address—a motion the Magistrate nonetheless deemed "frivolous" (DE 88, p. 7; DE 126, p. 5). Yet, when faced with Defendant's own clear procedural violation, the Court waived the rule.

Defendant repeatedly asserted attorney-client privilege but failed to provide a privilege log, as is mandatory under Federal Rule of Civil Procedure 26(b)(5)(A). In his Objections, Plaintiff squarely presented this issue to the Court (DE 94, p. 4). This Court explicitly excused Defendant's procedural default, reasoning that "analyzing attorney/client or work product privilege was unnecessary" because the discovery was being denied on other grounds (DE 126, p. 4). This ruling rewarded Defendant for its own violation, creating a "discovery black box" that has shielded an unknown number of documents from any form of review. This refusal to enforce a mandatory federal rule constitutes a structural error that has rendered the discovery process fundamentally unfair and demonstrates a biased application of the rules.

**C. The Court Characterized Plaintiff's Advocacy as "Obstructive" While Neutrally Describing Defendant's Unexplained Tactical Reversals.**

The Court's disparity in tone reinforces the appearance of bias. In his order certifying the appeal as frivolous, Judge Middlebrooks characterized Plaintiff's vigorous litigation efforts as "generally... obstructive" and a "delay tactic" (DE 156, p. 5).

This critical language stands in stark contrast to the Court's dispassionate description of Defendant's own tactical reversal just days later. In his order on the jury trial demand, the Judge noted that Defendant, after months of demanding a jury trial, filed a notice consenting to a bench trial "without explanation" (DE 157, p. 2). When Plaintiff litigates his case, he is labeled "obstructive." When Defendant executes a significant and unexplained tactical reversal, its conduct is presented as a neutral procedural event, a reversal the Court ultimately rewarded by striking the jury demand entirely (DE 157).

**D. The Court Accepted Defendant's Bad-Faith Denial of a Verifiable Fact.**

The Court further demonstrated its partiality by failing to enforce a basic discovery rule against Defendant. In Request for Admission No. 21, Plaintiff asked Tesla to admit receipt of his revocation letter, attaching a signed USPS Certified Mail return receipt as dispositive proof of delivery (DE 62-1, Ex. RFA-J). Defendant responded with a one-word "Denied" (DE 62-2, p. 6).

The Magistrate Judge, affirmed by this Court (DE 126), refused to compel a proper answer, stating he would not force a party to change its response if it had a "good faith basis" (DE 88, p. 5), without ever questioning the basis for a denial in the face of documentary proof. This failure to scrutinize a bad-faith denial of a verifiable fact, while later characterizing Plaintiff's efforts to enforce the rules as an "intent to harass" (DE 88, p. 4), contributes to the cumulative pattern of disparate treatment satisfying the standard for recusal under § 455(a).

**II. PHASE TWO: THE COURT ABDICATED ITS DUTY TO POLICE A FRAUD ON THE COURT, KNOWINGLY RATIFYING AN INJUSTICE.**

The Court's conduct escalated from creating an appearance of partiality to causing active, tangible harm. By knowingly affirming a sanction order that was the direct fruit of Defendant's proven falsehood, this Court abdicated its duty to police a fraud on its own proceedings and ratified a manifest injustice.

The causal chain of prejudice is undeniable and documented in the record:

1. The Foundational Falsehood: On May 19, 2025, Tesla submitted a sworn interrogatory stating that "Abner Pena conducted the review of Plaintiff's alleged revocation" (DE 105-1).
2. The Direct Judicial Reliance: On June 30, 2025, Magistrate Judge Matthewman explicitly relied on this falsehood to deny another of Plaintiff's motions (DE 81), reasoning that deposing another witness seemed "unnecessary" precisely because "the Court already ordered the deposition of Abner Pena, a current employee of Defendant who reviewed the facts of Plaintiff's case" (DE 88, p. 7).
3. The Resulting Sanction: Because the motion was deemed "unnecessary" based on the lie, the Magistrate Judge sanctioned Plaintiff in that same order (DE 88, p. 7). The sanction is, therefore, the direct fruit of the poisonous tree.
4. The Ratification by This Court: This Court, with full knowledge that the premise was false, affirmed the sanction (DE 126).

This Court's act of affirming the order was an act of ratifying a known falsehood. A judge's refusal to acknowledge that a subordinate's order is based on a proven falsehood, and instead affirming that order without comment, would lead any reasonable person to question that judge's impartiality and commitment to the truth-finding process. By validating an injustice in this

manner, the Court cemented the appearance of partiality and allowed a financial penalty to stand against Plaintiff that was inextricably linked to the Defendant's fraud on the court.

## III. PHASE THREE: THE COURT ABANDONED JUDICIAL NEUTRALITY, DISPLAYING DEEP-SEATED ANTAGONISM.

The pattern of bias culminated in an extraordinary judicial act that is the dispositive evidence of the "deep-seated... antagonism" that requires recusal under *Liteky*. The Court's unsolicited order (DE 156) was improper in several distinct ways: it was the culmination of a biased pattern of conduct, it transformed the Court into an adversary, its reasoning was circular and punitive, and it created a structural error by prematurely adjudicating a separate, pending motion.

### A. The Cumulative Effect of Prior Rulings Creates an Undeniable Appearance of Partiality.

The Judge's prejudgment in DE 156 is not an isolated event but the culmination of a pattern of judicial rulings that have consistently and disproportionately favored the Defendant while holding the pro se Plaintiff to a punitive standard. An objective observer would consider the following cumulative record:

- The Court affirmed sanctions against the pro se Plaintiff for an admitted procedural error, while simultaneously positioning itself to ratify a Magistrate's finding that a material falsehood submitted under oath by the corporate Defendant—represented by a large law firm—was a mere "tempest in a teapot."
- The Court sanctioned Plaintiff for filing a motion to compel (DE 81) that was later proven to have been substantially justified by Defendant's falsehood, yet repeatedly excused

Defendant's own mandatory procedural violations, such as its failure to produce a privilege log.

- The Court has adopted a disparate and critical tone when describing Plaintiff's litigation efforts, labeling them "obstructive," while neutrally describing Defendant's own significant and unexplained tactical reversals as mere procedural events.
- After chastising Plaintiff's litigation as "obstructive," the Court accepted Defendant's unexplained tactical reversal on the jury trial demand and proceeded to strike the jury trial altogether (DE 157), a ruling that directly benefited the party whose conduct the Court described neutrally.

Viewed in this context, the premature finding in DE 156 is the final piece of evidence demonstrating a pattern of conduct from which an objective observer would entertain a significant doubt about the Court's impartiality. The core principle of 28 U.S.C. § 455(a) is that "justice must satisfy the appearance of justice." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988). That appearance has been shattered here.

**B. The Court Became an Adversary to the Appellant.**

On August 15, 2025, I filed a standard Notice of Appeal (DE 129). A mere seven days later, on August 22, 2025, before Plaintiff had filed any appellate brief, this Court issued its *sua sponte* "Order on Plaintiff's Notice of Appeal" (DE 156). In this order, the Court declared, "I find that Plaintiff's appeal is frivolous and will certify it as such so that this litigation may continue" (DE 156, p. 5). The Court prejudged the merits, stating, "Plaintiff's likelihood of success... is minimal" (DE 156, p. 5).

Such an action cannot be characterized as adjudication; it is, by its nature, an extrajudicial attack on a litigant for exercising his statutory right to appeal. By assessing the "likelihood of success" and declaring the appeal "frivolous" before the appellant had even presented his arguments, Judge Middlebrooks stepped out of his role as a neutral arbiter and became an advocate for his own ruling and an adversary to the appellant.

The Court's stated justification reveals an improper motive. The Judge explicitly stated his purpose was to invoke the "dual jurisdiction" rule to "retain jurisdiction" over the case and "minimize disruption" (DE 156, p. 4). This is not a neutral concern for judicial efficiency, but a manifestation of bias. The filing of a notice of appeal ordinarily divests the district court of jurisdiction. By making a "frivolous" determination without the benefit of any briefing, the judge could not have had a good-faith basis for invoking the narrow exception. His stated goal was simply to prevent the ordinary operation of appellate procedure from interfering with his personal desire to push the case to a conclusion.

**C. The Court's Premature Adjudication of a Pending Motion Created a Structural Error.**

The same order (DE 156) reveals a deeper, structural bias. In finding Plaintiff's conduct "obstructive," the Court explicitly cited as an example the act of filing Plaintiff's pending Motion for Sanctions (DE 105) (DE 156, p. 5, n.3). The Court made this finding three days before the Magistrate Judge had even ruled on that motion.

This premature adjudication is a structural error that has corrupted the neutrality of the tribunal itself. By labeling the motion "obstructive," the Court was not merely prejudging a future motion; it was punishing a litigant for fulfilling his duty to report a fraud on the court. The

Judge's finding has now become the "law of the case"—a principle that holds that a court's decision on an issue, once made, should be followed for the remainder of the case. For the District Judge to now sustain Plaintiff's forthcoming objections on that same matter, he would be forced to directly contradict and overturn the established law of his own case. This places Plaintiff in an unconstitutional "catch-22" and makes a fair review impossible.

**D. The Court's Reasoning Was Circular and Punitive.**

Furthermore, the Court's reasoning for its "frivolous" finding is both circular and punitive. The Order justifies its conclusion by citing the very discovery motions denied in the order being appealed as evidence of Plaintiff's "obstructive" conduct (DE 156, p. 5, n.3). This is the definition of a circular argument: the court is using its own contested rulings as evidence to invalidate the appeal of those very rulings. This is not a neutral legal analysis; it is a hostile attack on the litigant for the very act of seeking appellate review and demonstrates a personal investment in the finality of his own orders and constitutes precisely the type of "deep-seated... antagonism" that Liteky described as grounds for recusal.

**E. Recusal is Necessary to Protect Institutional Integrity.**

This motion is not merely about potential prejudice to one litigant. The Judge's actions create a dangerous precedent that threatens the integrity of the magistrate review process. If a district judge is permitted to pre-judge the merits of objections before they are even filed, the review process under Rule 72(a) becomes a meaningless formality, effectively insulating a magistrate's rulings from meaningful review. Recusal is therefore necessary not just for the parties, but to

protect the institutional integrity of the judiciary itself.

## CONCLUSION

To protect the integrity of the judicial process and ensure Plaintiff receives a fair trial before an impartial tribunal, recusal is required.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order:

- GRANTING this Motion for Disqualification;
- ORDERING the recusal of the Honorable Donald M. Middlebrooks from all further proceedings in this matter;
- REQUESTING that the Clerk of Court reassign this case to another District Judge pursuant to the Court's internal procedures; and

## CERTIFICATE OF GOOD FAITH

Pursuant to 28 U.S.C. § 144, I, Leonardo Crespo, certify that this motion and the accompanying affidavit are made in good faith.

Respectfully submitted,

Leonardo Crespo, Plaintiff, Pro Se
1128 Crystal Drive, Palm Beach Gardens, FL 33418
leo@leocrespo.com 725-225-6889
Dated: September 5, 2025

**AFFIDAVIT OF LEONARDO CRESPO IN SUPPORT OF MOTION FOR DISQUALIFICATION**

I, Leonardo Crespo, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Plaintiff in the above-captioned action and make this affidavit in support of my Motion to Disqualify the Honorable Donald M. Middlebrooks based on my personal knowledge of the facts and the official court record.

2. This Court affirmed a sanction against me, a pro se litigant, for an admitted procedural error involving AI-generated placeholder citations (DE 88; DE 126).

3. In contrast, the Magistrate Judge, in an order this Court is positioned to ratify, dismissed a material falsehood submitted under oath by the corporate Defendant as a mere "tempest in a teapot" (DE 170, p. 5).

4. This Court affirmed a separate sanction against me for filing a motion to compel a former employee's contact information, which the Magistrate deemed "frivolous" and "unnecessary" (DE 88, p. 7; DE 126, p. 5).

5. The total monetary award for my procedural error with AI citations and for filing the allegedly "frivolous" motion was $921.00 (DE 93, p. 7; DE 126, p. 5).

6. When Defendant failed to provide a mandatory privilege log as required by Fed. R. Civ. P. 26(b)(5)(A), this Court explicitly excused the violation, reasoning it was "unnecessary" to analyze the privilege issue (DE 126, p. 4).

7. In Request for Admission No. 21, I asked Tesla to admit receipt of my revocation letter, attaching a signed USPS Certified Mail return receipt as dispositive proof of delivery (DE 62-1,

Ex. RFA-J). Defendant responded with a one-word "Denied" (DE 62-2, p. 6). The Magistrate Judge, in an order this Court affirmed (DE 126), refused to compel a proper answer, stating he would not force a party to change its response if it had a "good faith basis" (DE 88, p. 5), without questioning the basis for a denial in the face of documentary proof.

8. In his order (DE 156), Judge Middlebrooks characterized my litigation efforts as "generally... obstructive" and a "delay tactic" (DE 156, p. 5). Days later, the Judge neutrally described Defendant's unexplained tactical reversal on its jury demand as occurring "without explanation" (DE 157, p. 2).

9. On May 19, 2025, Tesla submitted a sworn interrogatory stating that "Abner Pena conducted the review of Plaintiff's alleged revocation" (DE 105-1).

10. This sworn statement was proven to be false by Mr. Pena's own deposition testimony on June 17, 2025, during which he testified under oath, "Again, I did not conduct a review of the revocation. This was sent to our legal team. My... My review was of the repurchase request" (DE 105-1, p. 20, ll. 12-15).

11. On June 30, 2025, Magistrate Judge Matthewman explicitly relied on this falsehood to deny my motion to compel contact information for another witness (DE 81), reasoning that it was "unnecessary" because the Court had already ordered the deposition of Mr. Pena "who reviewed the facts of Plaintiff's case" (DE 88, p. 7). Based on this flawed reasoning, the Magistrate sanctioned me.

12. This Court subsequently affirmed that sanction order (DE 126), thereby ratifying a penalty that was the direct fruit of Defendant's proven falsehood.

13. On August 15, 2025, I filed a Notice of Appeal (DE 129). On August 22, 2025, before I

had filed any appellate brief, this Court issued a *sua sponte* order (DE 156) declaring, "I find that Plaintiff's appeal is frivolous and will certify it as such so that this litigation may continue" (DE 156, p. 5).

14. The Court's stated justification for this action was to "retain jurisdiction" over the case and "minimize disruption" (DE 156, p. 4), revealing an improper motive to prevent the ordinary operation of appellate procedure.

15. In that same order (DE 156), the Court found my conduct "obstructive," and explicitly cited as an example the act of filing my pending Motion for Sanctions (DE 105) (DE 156, p. 5, n.3). The Court made this finding three days before the Magistrate Judge had even ruled on that motion, thereby prematurely adjudicating the merits of a motion that would later come before this Court for review.

16. The Court's reasoning for its "frivolous" finding was circular and punitive. The Order justifies its conclusion by citing the very discovery motions denied in the order being appealed as evidence of my "obstructive" conduct (DE 156, p. 5, n.3).

17. The cumulative pattern of the facts stated in paragraphs 2 through 16 of this affidavit—including the Court's disparate application of sanctions and procedural rules, its ratification of a sanction based on a known falsehood, its premature adjudication of a pending motion, and its *sua sponte* order declaring my un-briefed appeal frivolous for the stated purpose of retaining jurisdiction—forms the basis for my belief that the Honorable Donald M. Middlebrooks has a personal bias and prejudice against me and that his impartiality in this matter might reasonably be questioned.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 5, 2025.

Leonardo Crespo

**CERTIFICATE OF CONFERRAL**

Pursuant to Local Rule 7.1(a)(3), I hereby certify that on September 2, 2025, I made a good faith effort to confer with counsel for Defendants, Jessica J. Gross, Esq., and Patrick M. Delaney, Esq., regarding the relief sought in this motion. Mr. Delaney stated that Tesla opposes the motion.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of September, 2025, a true and correct copy of the foregoing was served via email upon counsel for Defendants: Jessica J. Gross, Esq. (jgross@rumberger.com) and Patrick M. Delaney, Esq. (pdelaney@rumberger.com).

Leonardo Crespo